IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| ZACKARAY SALAS, | * |
|     Plaintiff, | * |
| vs. | * |
| |     CASE NO. 4:21-CV-182 (CDL) |
| COLUMBUS CONSOLIDATED GOVERNMENT, *et al.*, | * |
| | * |
|     Defendants. | |
| | * |

O R D E R

Zackary Salas filed this pro se action against the Columbus Consolidated Government, seven Columbus police officers, and a former Columbus police chief. His complaint is based on three encounters with Columbus police officers. Defendants moved to dismiss Salas's claims. For the reasons set forth below, the Court grants Defendants' motion to dismiss (ECF No. 18).

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual

allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Salas alleges the following facts in his complaint, which the Court accepts as true for purposes of the present motion.

The 2015 Encounter.  On December 6, 2015, Columbus police officers Foy and Rogers pulled Salas over for driving without brake lights.  They asked Salas's permission to search his vehicle, and Salas refused.  Rogers radioed for a K-9 unit, and officer Taft arrived with a police dog to conduct an air sniff search.  Foy, Taft, and Rogers then searched Salas's vehicle and found prescription medications.  The officers arrested Salas for possessing Schedule IV drugs, drugs not in the original container, and no brake lights.  The charges against Salas were later dismissed.

The 2016 Encounter.  On October 14, 2016, Salas was involved in a minor car accident.  He believed that he reached an agreement with the other driver to resolve the issue, and he went home.  Thirty minutes later, Columbus police officer Shuler

2

knocked on Salas's door, and when Salas answered Shuler pulled him out of the doorway and arrested him.

The 2019 Encounter.   On October 22, 2019, Salas was remodeling, renovating, and cleaning out a home in Columbus, Georgia.  Columbus police officers received a call that the home was uninhabited and that someone was breaking into the shed.[1] Columbus police officers Kern, Hall, Gordy, and Knighte responded to the scene with their guns drawn and told Salas that someone called and said that Salas did not have the right to be there.  The officers asked for Salas's identification, which he provided, and Salas explained that the home's owner had hired him to remodel the house.  The officers contacted the person Salas identified as the owner and confirmed that the person authorized Salas to be at the location.  Officers detained Salas for approximately thirty more minutes while they investigated whether the person Salas identified actually owned the property. Once the officers confirmed that the property's owner granted Salas permission to be there, they released him.  Salas does not allege that he was arrested or that he was detained longer than thirty minutes.  Salas does allege that he believes then-police chief Ricky Boren arrived on the scene at some point and witnessed the detention.  Salas did not allege any facts about

---

[1] The Complaint does not state whether Salas was inside the home or outside near the shed when the officers arrived.  There is no allegation that any officers entered the house.

3

when Boren arrived on the scene or how long he was there before Salas was released.

<u>This Action.</u>  Salas filed this action on October 19, 2021. He asserts claims under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights, as well as claims under Georgia law.

## DISCUSSION

Defendants seek to dismiss the claims based on the 2015 and 2016 encounters as time-barred.  They also move to dismiss the claims arising from the 2019 encounter, arguing that Salas did not plausibly allege a constitutional violation and that the officers are entitled to qualified immunity.  The Court addresses each argument below.

**I.  Section 1983 Claims Based on the 2015 and 2016 Encounters**

Claims under 42 U.S.C. § 1983 are subject to the statute of limitations applicable to personal-injury torts under state law. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Under Georgia law, the statute of limitations for such claims is two years. O.C.G.A. § 9-3-33; *accord Jones v. Union City*, 450 F. App'x 807, 808-09 (11th Cir. 2011) (per curiam).  Therefore, Salas had until 2017 to bring claims based on the 2015 Encounter and until 2018 to bring claims based on the 2016 Encounter.  He did not file this action until 2021, so his claims based on the 2015 and 2016 Encounters are time-barred.

4

Salas argues that the statute of limitation for the 2015 and 2016 Encounters is tolled under O.C.G.A. § 9-3-99, which tolls the running of the period of limitations "with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime." The limitations period is tolled "until the prosecution of such crime or act has become final or otherwise terminated." O.C.G.A. § 9-3-99. For purposes of O.C.G.A. § 9-3-99, the term "crime" means a "crime" as defined in O.C.G.A. § § 16–2–1(a): "violation of a statute of [Georgia] in which there is a joint operation of an act or omission to act and intention or criminal negligence." *Beneke v. Parker*, 684 S.E.2d 243, 244 (Ga. 2009). Salas appears to contend the alleged Fourth Amendment violations against him constitute crimes under Georgia law, though he did not identify any criminal laws the officers allegedly violated.

Even if Salas had identified a crime that the officers committed against him in 2015 or 2016, O.C.G.A. § 9-3-99 does not save his claims. Salas did not allege that any of the officers were or could be prosecuted based on the 2015 and 2016 Encounters. Nor could he, because the time for any prosecution based on the 2015 and 2016 Encounters expired before Salas filed this action. The two-year statute of limitation for prosecution of a misdemeanor began to run on the date of each Encounter

(O.C.G.A. § 17-3-1(e)), as did the four-year statute of limitation for prosecution of a felony (O.C.G.A. § 17-3-1(c)). The 2015 Encounter took place on December 6, 2015, so the statute of limitation for a purported felony offense arising out of that Encounter extended to December 6, 2019. The 2016 Encounter took place on October 14, 2016, so the statute of limitation for a purported felony offense arising out of that Encounter extended to October 14, 2020 (or February 13, 2021 at the latest).[2] Salas did not file this action until October 19, 2021.

There was never a prosecution of the officers, and there can be no prosecution in the future. Accordingly, the Court finds that O.C.G.A. § 9-3-99 does not require that the statute of limitation for the tort claims in this case be tolled. *See Jenkins v. Keown*, 830 S.E.2d 498, 502 (Ga. Ct. App. 2019) (concluding that O.C.G.A. § 9-3-99 did not apply where the statute of limitation for a prosecution arising out of a wreck passed before the plaintiffs perfected service on the defendant driver). Salas's § 1983 claims based on the 2015 and 2016 Encounters are time-barred and therefore dismissed.

---

[2] The Georgia Supreme Court tolled statutes of limitations, including those in criminal cases, for 122 days between March 14, 2020 and July 14, 2020. *See* Order Declaring Statewide Judicial Emergency (Ga. Mar. 14, 2020), https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf; Fourth Order Extending Declaration of Statewide Judicial Emergency (Ga. July 10, 2020), https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf.

**II.  Section 1983 Claims Based on the 2019 Encounter**

Salas contends that officers Kern, Hall, Gordy, and Knighte violated the Fourth Amendment during the 2019 Encounter by (1) detaining him for about thirty minutes while they confirmed that he was authorized to be at the property and (2) approaching him with their guns drawn.  The Fourth Amendment requires probable cause for a custodial arrest and a reasonable articulable suspicion of criminal activity to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  Here, Salas alleges that the officers reported receiving a call that someone was breaking into a shed at an uninhabited home.  They found Salas at the property.  He does not dispute that the officers' decision to detain him was valid under *Terry*.[3]

Salas does contend that the officers' display of weapons amounted to excessive force, but the Eleventh Circuit has repeatedly condoned officers who draw their weapons when approaching individuals for an investigatory stop if it is reasonably necessary for officer protection or maintaining order.  *See, e.g., Courson v. McMillian*, 939 F.2d 1479, 1493 (11th Cir. 1991).  Based on Salas's allegations, the officers

---

[3] A panel of the Eleventh Circuit has applied *Terry* in the context of a seizure that occurred outside a vacant house in an area where there had been a rash of burglaries of vacant houses.  *Clark v. City of Atlanta, Ga.*, 544 F. App'x 848, 854 (11th Cir. 2013) (per curiam). There was no Fourth Amendment violation when officers came onto the property with their guns drawn to question the individuals who were present at the property.  *Id.* (citing *United States v. Tobin*, 923 F.2d 1506, 1511 (11th Cir. 1991)).

7

were responding to a suspected burglary in Columbus, Georgia. The Court cannot say that a reasonable and cautious police officer on the scene acted unreasonably in being prepared for possible violence in approaching Salas. There is no allegation that the officers continued to display their weapons after Salas began cooperating with the officers by explaining why he was at the house and providing his identification. For these reasons, the Court finds that Salas did not allege facts to suggest that the officers' display of weapons constituted excessive force or converted the *Terry* stop into a custodial arrest.

In addition to his excessive force claim, Salas suggests that the investigative detention was not sufficiently limited in scope and duration to remain within the bounds permitted by *Terry*. Authority for a *Terry* stop "ends when tasks tied to the [alleged] infraction are—or reasonably should have been—completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (evaluating a seizure in the context of a traffic stop). So, for a traffic stop, "such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. In the suspected burglary context, such inquiries include ascertaining the identity of the property owner and the suspect, then

determining whether the property owner authorized the suspect to be at the property.

Here, Salas alleges that the officers arrived at the house in response to a call that someone was breaking into a shed at an uninhabited home. Salas alleges that he explained that the house's owner hired him to remodel it. He further alleges that the officers took approximately thirty minutes to verify Salas's assertion that the property owner gave him permission to be at the house because there was some confusion about who had title to the property. There is no allegation that the officers failed to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly. There is no allegation that the officers were not diligent or that they took longer than was reasonable to confirm the property owner's identity under the circumstances. There is no allegation that the officers restrained Salas in any manner other than refusing to let him leave the scene while they investigated his claim that he had permission to be at the house. There is also no allegation that the officers detained Salas after they confirmed the identity of the owner and learned that Salas was authorized to be there. And there is no allegation that the officers diverted from the stop's purpose to investigate other crimes.

The Eleventh Circuit has noted that a *Terry* stop of thirty minutes "is not beyond the pale of reasonableness for *Terry*

9

stops" where the officers used brief, minimally intrusive investigation techniques, were diligent in pursuing their investigation, and used a reasonable level of restraint. *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004). But even if the thirty-minute stop of Salas were considered too long to pass muster under the Fourth Amendment, Chief Boren and Officers Kern, Hall, Gordy, and Knighte are entitled to qualified immunity. Qualified immunity "protects government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" *Moore v. Pederson*, 806 F.3d 1036, 1042 (11th Cir. 2015) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)).

Salas did not dispute that the officers were engaging in a discretionary function when they detained him. Salas also did not point to any authority clearly establishing that a thirty-minute detention under the circumstances alleged in Salas's complaint would be a constitutional violation. Again, the Eleventh Circuit has approved *Terry* stop detentions of thirty minutes or more where the officers diligently pursued their investigation using brief, minimally intrusive investigation techniques. Thus, the Court cannot conclude that every reasonable officer would understand that the detention here

10

would violate Salas's Fourth Amendment rights. For these reasons, Chief Boren and Officers Kern, Hall, Gordy, and Knighte are entitled to qualified immunity on the individual capacity claims against them.

Salas also brings a Fourth Amendment claim based on the 2019 Encounter against the officers in their official capacities, which is considered a claim against their employer—the Columbus Consolidated Government ("CCG"). Defendants moved to dismiss that claim based on their argument that the 2019 Encounter did not violate the Fourth Amendment. Even if the 2019 Encounter violated the Fourth Amendment, a local government like CCG cannot be liable under § 1983 unless its official policy causes a constitutional violation. *See, e.g., Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Although Salas asserts that the officers on the scene lacked training on "exceptions to warrantless arrests and exigent circumstances," Compl. ¶ 84, he does not dispute that the officers' initial decision to detain him was lawful. And even if the Court were to conclude that the detention matured into an arrest based on its length, Salas asserted no factual allegations that an official CCG policy or custom played a role in the length of Salas's detention or that a final policymaker established a policy or custom of unlawfully prolonging *Terry* stops. The Court recognizes that Salas alleges that Chief Boren

11

arrived on the scene at some point. But there are no factual allegations regarding Boren's conduct—when he arrived, what he did, or how long he was on the scene before Salas was released. Thus, the factual allegations are not sufficient to state a municipal liability claim against CCG based on the 2019 Encounter.

## CONCLUSION

As discussed above, Defendants' motion to dismiss (ECF No. 18) is granted. All of Salas's § 1983 claims are dismissed. These are the only claims over which the Court has original jurisdiction. Now that the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Salas's state law claims, and those claims are dismissed without prejudice. 28 U.S.C. § 1367(c).

IT IS SO ORDERED, this 5th day of August, 2022.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA